# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                                      CRIMINAL ACTION NO. 2:19-cr-00296

NICHOLAS ELIAS BOGGESS

## MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Suppress Evidence filed by Defendant Nicholas Boggess. [ECF No. 31]. On February 20, 2020, the court held a pre-trial motion hearing on the matter. [ECF No 37]. The matter is now ripe for adjudication. The Motion is **DENIED** for the reasons that follow.

### I. Background

Defendant Boggess filed a Motion to Suppress Evidence from a traffic stop that occurred on October 6, 2019. On that date, Defendant Boggess and his girlfriend, Catlin Judge, were traveling from Ripley, West Virginia to Kenna, West Virginia. Defendant Boggess, who was driving his Jeep Renegade, entered I-77 southbound at the Ripley, West Virginia exit. The area was under construction and a yield sign had been placed at the on ramp.

Corporal Lowe of the West Virginia State Police was also traveling southbound I-77. Corporal Lowe saw Deputy Varney of the Jackson County Sheriff's Department engaged in a traffic stop on the interstate. Deciding to assist with the stop, Corporal

Lowe drove past Deputy Varney's car and made a U-turn, traveling northbound onto the Ripley exit, intending to loop back around so as to safely pull behind Deputy Varney. When Corporal Lowe entered I-77 northbound he activated his emergency lights. Corporal Lowe then entered I-77 southbound to respond to Deputy Varney's position. Corporal Lowe was travelling at a speed of 85 mph. The speed limit on that stretch of highway is 70 mph.

Corporal Lowe approached Defendant's jeep, which was travelling in the left lane. The jeep then moved into the right lane to allow Corporal Lowe to pass him. The government avers that the Defendant's jeep then accelerated to the same speed as the police car and kept pace with the police car to the location where Deputy Varney was conducting a traffic stop. When Corporal Lowe neared Deputy Varney, however, it was apparent that the traffic stop had concluded. At that point, he slowed down to permit the Defendant's jeep to pass him. Once it did, Corporal Lowe initiated a traffic stop for a speeding violation.

The Defendant's version of events is somewhat different. At the pretrial motion hearing, Ms. Judge testified that Corporal Lowe passed Defendant's car just after they merged onto I-77 into a construction zone. She testified that at that time, Defendant was travelling at a speed of 45 to 50 mph in the right-hand lane. She further testified that Defendant then moved behind Corporal Lowe into the left-hand lane because of the traffic stop being conducted by Defendant Varney on the right-hand shoulder of the road. Defendant was travelling approximately 60 mph at that point. According to Ms. Judge, Corporal Lowe then turned off his emergency lights

2

and slowed his speed significantly. Defendant pulled back into the right-hand lane. Ms. Judge testified that Corporal Lowe then accelerated a bit until they were side by side and then pulled behind Defendant's jeep, switched on his lights, and initiated a traffic stop.

There are several different accounts of where exactly on I-77 this traffic stop occurred. During the dispatch call at the scene, Corporal Lowe reported the location at a half-mile past the Ripley exit. The affidavit he signed on October 11, 2019 reflected that the stop occurred one mile past the Ripley exit. His police report, date unknown, states that the stop was two miles past the exit. At the pretrial motions hearing, he testified that it was between "a mile and two, two maybe."

Corporal Lowe testified that upon approaching Defendant's vehicle he detected the odor of raw marijuana emanating from the car. Corporal Lowe asked Defendant Boggess when the last time marijuana had been smoked in the car. Defendant Boggess replied that marijuana had never been smoked in the car and that there was no marijuana in the car. Corporal Lowe then asked if Defendant Boggess had any objection to him searching the vehicle to make sure there was no marijuana. Defendant Boggess told the trooper he could search the vehicle. Defendant Boggess also informed Corporal Lowe that he had firearms in the car.

The search of Defendant's car was conducted by Corporal Lowe and Deputy Varney, who came to assist Corporal Lowe at the conclusion of his own traffic stop. Corporal Lowe recovered a loaded Glock 19, 9mm pistol, from under the driver's console. Corporal Lowe located a Blackheart 7.62x39 mm, SKS rifle with the

3

magazine detached on the floorboard in front of the rear passenger seat. As previously mentioned, Defendant Boggess had disclosed the presence of both firearms prior to the search. Corporal Lowe located a backpack on the rear passenger seat. Inside the back was a cigarette pack that contained a plastic bag with approximately two grams of marijuana. Deputy Varney located a bag in the trunk of the car. Upon searching the bag, he uncovered an object that appeared to be a pipe bomb in the side pocket. The object was a cylindrical pipe with end caps affixed by electrical tape and a piece of hobby fuse sticking out one end.

At that point Deputy Varney alerted Corporal Lowe to the pipe bomb. Corporal Lowe testified that upon seeing the item he turned to Defendant Boggess and put his hands up in the air, gesturing in a "what the heck" type of motion. Tr. Mot. Suppress 17:1–7. Defendant responded that the item was just gunpowder. He further explained that he is a survivalist; his backpack was his "bug out bag" and the pipe bomb item was his "distraction device for his bug out bag." *Id.* at 17:10–13.

Defendant Boggess was then handcuffed and placed under arrest. Body armor, two commercial fireworks, and a plastic container with a screw on lid that contained gunpowder and a visco fuse were also recovered from the trunk of Defendant's car. Defendant seeks to suppress all evidence seized during the traffic stop as well as all the statements Defendant Boggess made to law enforcement during the stop.

## II. Legal Standard

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law. *United States v. Stevenson*, 396 F.3d 538, 541 (4th Cir.

4

2005). During the hearing, "the credibility of the witness[es] and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence, are all matters to be determined by the trial judge." *United States v. McKneely,* 6 F.3d 1447, 1452–53 (10th Cir. 1993); *see also Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.,* 56 F.3d 556, 567 (4th Cir. 1995) ("[I]n the usual case, the factfinder is in a better position to make judgments about the reliability of some forms of evidence than a reviewing body acting solely on the basis of a written record of that evidence. Evaluation of the credibility of a live witness is the most obvious example.") (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.,* 508 U.S. 602, 623 (1993)). The burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson,* 655 F.2d 559, 561 (4th Cir. 1981). Once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock,* 415 U.S. 164, 177 n.14 (1974).

### III. Discussion

Defendant seeks to suppress all evidence seized during the traffic stop as well as all statements made during the stop. He makes three arguments in support of his motion. First, he argues that Corporal Lowe did not have the requisite probable cause to initiate a traffic stop. Second, he argues that law enforcement did not have probable cause or voluntary consent to search the car. Third, he argues that he was

subject to a custodial interrogation without the benefit of *Miranda* warnings and therefore his statements to law enforcement should be suppressed.

### a. The Traffic Stop

Defendant argues that the initial traffic stop was illegitimate. The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "When a police officer stops an automobile and detains the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment." *United States v. Sowards*, 690 F.3d 583, 588 (4th Cir. 2012). A traffic stop is constitutional where police have probable cause to believe that a traffic violation has occurred. *Wilson v. Arkansas*, 514 U.S. 927, 931 (1995). Probable cause exists if, given the totality of the circumstances, the officer "had reasonably trustworthy information ... sufficient to warrant a prudent [person] in believing that the petitioner had committed or was committing an offense." *United States v. Sowards*, 690 F.3d 583, 588 (4th Cir. 2012) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Here, the main issue is whether Corporal Lowe had reasonably trustworthy information sufficient to support a prudent person's belief that Defendant Boggess was speeding. "The reasonableness of an officer's visual estimate that a vehicle is traveling in slight excess of the legal speed limit may be supported by radar, pacing methods, or other indicia of reliability that establish, in the totality of the circumstances, the reasonableness of the officer's visual speed estimate." *United*

*States v. Sowards*, 690 F.3d 583, 592 (4th Cir. 2012). Pacing refers to the practice of a police officer using his or her own speedometer to determine the speed of the suspect's vehicle. The reasonableness of an officer's speed estimate depends in part on whether a vehicle's speed is estimated to be in significant excess or slight excess of the legal speed limit. *Id.*

I find that Corporal Lowe had probable cause to believe that Defendant Boggess was speeding and thus the traffic stop was legitimate. The Defense makes a noteworthy effort to clearly lay out the short timeframe and distance in which the relevant events occurred, as well as the confusion caused by the position of multiple police vehicles—Corporal Lowe in the left-hand lane and Deputy Varney on the right-hand shoulder of the interstate. Nevertheless, Corporal Lowe provided credible testimony that, according to his speedometer, he was driving 85 mph at the time that Defendant Boggess's vehicle pulled up in the right-hand lane just behind him so Defendant's vehicle was at the back edge of his own. Corporal Lowe testified that Defendant Boggess's vehicle kept pace with his for approximately thirty seconds at 85 mph in an area in which the legal speed limit is 70 mph. This testimony indicates that Defendant's car was traveling at a speed which was significantly in excess of the legal speed limit.

Corporal Lowe testified that he had received training on pacing as well as estimating vehicle speeds. He stated that, when tested in his training, nine out of ten times he was able to estimate how fast somebody was traveling within two miles an hour. Defendant emphasizes that Corporal Lowe did not use any form of radar to

7

determine the speed of Defendant's vehicle. Corporal Lowe however not only visually estimated the speed but also used the method of pacing, using his own speedometer to gauge the speed of Defendant's jeep. I find enough indicia of reliability under the totality of the circumstances that Defendant Boggess was speeding in excess of the legal limit. Thus, the initial traffic stop was constitutional.

### b. The Search of Defendant's Vehicle

Defendant argues that the warrantless search was constitutional because (1) law enforcement lacked probable cause to search, and (2) he did not give valid consent to search. I find that the officers had probable cause and thus I do not reach the consent issue.

The Supreme Court in *Rodriguez v. United States* held that "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'--to address the traffic violation that warranted the stop, . . . and attend to related safety concerns[.]" 135 S. Ct. 1609, 1614 (2015). Authorization for the traffic stop ends when tasks tied to the purpose of the stop have, or reasonably should have, concluded. To extend a traffic stop for investigatory purposes either the driver must consent, or the officer must have reasonable suspicion of a crime. *United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008). To conduct a search of an automobile without a warrant, police must have probable cause to believe that the car contains contraband. *See Arizona v. Gant*, 556 U.S. 332, 347 (2009); *United States v. Carter*, 300 F.3d 415, 422 (4th Cir. 2002). Probable cause is a flexible concept, not readily reduced to a neat set of legal rules. *United States v. Champion*, 609 F. App'x 122, 125

8

(4th Cir. 2015). Probable cause exists "where the known facts and circumstances are sufficient to warrant a man [or woman] of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Id.*

The Fourth Circuit has generally held that the odor of marijuana can provide probable cause to believe marijuana is present in a particular place, thereby providing probable cause for a search. *See e.g.*, *United States v. Champion*, 609 F. App'x 122, 125 (4th Cir. 2015); *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004); *United States v. Scheetz*, 293 F.3d 175, 184 (4th Cir. 2002) ("Once the car was properly stopped and the narcotics officers smelled marijuana, the narcotics officers properly conducted a search of the car.").

Here, Defendant argues that this precedent should be revisited because the "rationale of this line of cases no longer exists as it is lawful to grow, cultivate, possess and sell hemp products." Def.'s Suppl. Mem. of Law in Supp. of Mot. to Suppress Evid. 8 [ECF No. 43]. In support of this proposition, Defendant points to recent federal and West Virginia state laws that legalized hemp. *See* W.V. Code § 19-12E-1-19-12E-9 (June 2019); 21 U. S. C. § 802(16) (2019); Agricultural Improvement Act of 2018 Pub. L. No. 115-334, 132 stat. 4490; Agricultural Act of 2014 Pub. L. No. 113-79, § 11009, 128 stat. 649. Defendant avers that because marijuana and hemp come from the same plant the difference between the two are impossible to discern with the naked eye or

9

distinguished by smell.[1] Thus, marijuana no longer has a "distinct smell" that indicates a crime is being committed.

The Fourth Circuit has not addressed the potential effect legal hemp has on its Fourth Amendment precedent. Similarly, there is very little case law on the subject from other jurisdictions.[2] The Ninth Circuit briefly spoke to the issue in a civil suit brought under 42 U.S.C. § 1983. *See Lingo v. City of Salem*, 832 F.3d 953, 961 (9th Cir. 2016). In that case, the court held that officers had probable cause to arrest the

---

[1] It is well established that hemp and marijuana are "varieties of the same species, Cannabis sativa L." Gero Leson et al., *Evaluating the Impact of Hemp Food Consumption on Workplace Drug Tests*, 25 J. of Analytical Toxicology 691, 692 (Nov. /Dec. 2001); accord *The Health Effects of Cannabis and Cannabinoids: The Current State of Evidence and Recommendations for Research*, National Academies of Sciences, Engineering, and Medicine, at * 38 & n.6 (2017), available at https://doi.org/10.17226/24625. The primary difference is that marijuana has a higher concentration of the psychoactive compound cannabinoid delta 9 tetrahydrocannabinol, more commonly known as THC. *See Evaluating the Impact of Hemp Food Consumption*, at 692. From this information, it is fair to infer that the odor of hemp could be reasonably mistaken for the odor of marijuana.

[2] Some district courts across the country have addressed the issue of how legal hemp affects probable cause based on the odor of marijuana. *See e.g.*, *United States v. Clark*, No. 3:19-CR-64-PLR-HBG, 2019 WL 8016712, at *5 (E.D. Tenn. Oct. 23, 2019), report and recommendation adopted, No. 3:19-CR-64-2, 2020 WL 869969 (E.D. Tenn. Feb. 21, 2020) (finding that the odor of marijuana provides probable cause for a search despite the fact that hemp is legal in Tennessee); *United States v. Harris*, No. 4:18-CR-57-FL-1, 2019 WL 6704996, at *3 (E.D.N.C. Dec. 9, 2019) ("Defendant suggests that Fiedler was not trained to distinguish the smell of illegal marijuana from legal hemp flower, this does not undermine the factual determination that Fiedler's past experience enabled him to recognize the smell of burnt marijuana."); *United States v. Bignon*, No. 18-CR-783 (JMF), 2019 WL 643177, at *4 (S.D.N.Y. Feb. 15, 2019) (finding the officer had probable cause even if he "could have reasonably, but mistakenly, believed that he smelled marijuana given the close similarity, discussed above, of marijuana and hemp").

plaintiff based on a strong marijuana-like odor in her home, despite the plaintiff's argument that the odor emanated from legal hemp-scented incense. *Id.*

There is certainly a nationwide movement to legalize or decriminalize marijuana. Perhaps in the future, revisiting this precedent will be warranted. But possession of marijuana is still a criminal offense under West Virginia state law and federal law. *See* W.Va. Code §§ 60A-4-401 and 60A-2-204; 21 U.S.C. § 841(a). Therefore, Corporal Lowe's belief that there was likely illegal contraband present in Defendant's jeep was reasonable based on the odor of marijuana emanating from the vehicle. I find that law enforcement had probable cause to search Defendant's car and therefore I need not reach the issue of consent.

### c. Defendant's Statements Made to Law Enforcement

Defendant moves to suppress the statements he made to police during the traffic stop on the basis that he was not properly given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). It is undisputed that the officers did not advise Defendant of his *Miranda* rights until after he was formally arrested. Thus, the issue is whether such warnings were required, and, more specifically, whether Defendant was in custody during the encounter and if so, whether the officers' gestures and statements constituted an interrogation.

The Fifth Amendment protects individuals from being compelled to make incriminating statements against themselves. *See* U.S. Const. amend V. *Miranda* warnings must be given when a suspect is in custody and under interrogation. *Miranda*, 384 U.S. at 446. "Custodial interrogation" refers to "questioning initiated

by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *United States v. Kimbrough*, 477 F. 3d 144, 147 (4th Cir. 2007). Determining whether someone is in custody essentially asks whether "under the totality of the circumstances, a suspect's freedom of action was curtailed to a degree associated with formal arrest." *United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017). It is an objective inquiry that turns on "whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* "Facts relevant to the custodial inquiry include, but are not limited to, 'the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant.'" *United States v. Simmons*, 763 F. App'x 331, 332 (4th Cir. 2019) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984)).

Generally, routine traffic stops are not custodial and therefore do not require *Miranda* warnings. *United States v. Jackson*, 280 F.3d 403, 405 (4th Cir. 2002). Although the driver is not free to leave, a traffic stop is akin to a temporary stop based on reasonable suspicion, rather than a formal arrest. *Id.*; *see also United States v. Simmons*, 763 F. App'x 331, 332 (4th Cir. 2019).

In this case, the encounter between Defendant and law enforcement began as a routine traffic stop. The character of the stop shifted to a criminal investigation once Corporal Lowe detected the odor of marijuana and began the search of

12

Defendant's vehicle with assistance from Deputy Varney. But under the totality of the circumstances, I find that Defendant's freedom of action was not curtailed to a degree associated with a formal arrest. There were only two officers present during the encounter. The officers' statements did not indicate that Defendant was under arrest. The officers did not yell at Defendant or act in physically menacing ways. The testimony from both officers and Ms. Judge indicate that the tone of the interaction was calm and cooperative. The officers were armed but did not draw or refer to their weapons at any point. Ms. Judge was standing outside Defendant's vehicle. Defendant was in the back seat of his vehicle. Neither Defendant nor Ms. Judge were placed in handcuffs, prior to Defendant's formal arrest. Based on these facts and the testimony at the pretrial motions hearing, I do not find that Defendant Boggess was in custody at any point up until his formal arrest. Because he was not in custody, I do not need to determine whether the officers' gestures and statements constituted an interrogation. Defendant's statements are therefore admissible.

## IV. Conclusion

For the reasons contained herein, the court **DENIES** Defendant's Motion to Suppress Evidence Seized from the October 6, 2019 Traffic Stop and to Suppress Statements Made to Law Enforcement. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER: March 13, 2020

13

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE