IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                                CRIMINAL ACTION NO. 2:19-cr-00296

NICHOLAS ELIAS BOGGESS

MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Dismiss filed by Defendant Nicholas Elias Boggess. [ECF No. 55]. Parties have responded [ECF No. 58] and replied [ECF No. 59] and the Motion is ripe for decision. On December 3, 2019, the Government filed an indictment against Defendant charging him with possession of a firearm not registered under the National Firearms and Transfer Record in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. [ECF No. 16]. Specifically, Defendant is charged with knowingly possessing a pipe bomb, a destructive device, which was not registered. Defendant filed this Motion to Dismiss on the grounds that 26 U.S.C. § 5861(d) is an unconstitutional exercise of the Taxing Power both facially and as applied to Defendant. [ECF No. 55, at 1]. For the reasons stated below, Defendant's Motion to Dismiss is **DENIED**.

### I. The Taxing Power

"The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States," U.S. Const. art. I, § 8, cl. 1, and "To make all Laws which shall

be necessary and proper for carrying into Execution the foregoing Power[]," *id.* cl. 18. A tax passed by Congress that has a regulatory effect, "is not any less of a tax." *Sonzinsky v. United States*, 300 U.S. 506, 513 (1937).

However, if an exaction passed into law by Congress is not a tax, but rather a penalty, it needs to be supported by a different enumerated power in the Constitution. *See United States v. Constantine*, 296 U.S. 287 (1935). Over time, the Supreme Court has created guidance for determining whether an exaction is a tax or a penalty. *National Federation of Independent Business v. Sebelius*, requires that I take a "functional approach" to determining whether a tax is really—for constitutional purposes—a tax. 567 U.S. 519, 565 (2012).

There are three factors to consider when determining whether an exaction is a tax or a penalty. First, how heavy of a burden the exaction imposes helps determine if it is a tax or a penalty. A heavier burden weighs in favor of the exaction being a penalty rather than a tax. Second, the inclusion of a scienter requirement would weigh in favor of the exaction being a penalty rather than a tax. And, finally, who administers and collects the tax helps determine whether an exaction is a tax or a penalty. If the exaction is collected by the Department of the Treasury, that weighs in favor of the exaction being a tax rather than a penalty.

In *Sebelius*, the Supreme Court found that the Individual Mandate was actually a tax and not a penalty because of its low burden, its lack of scienter requirement, and because the payment was collected through the Internal Revenue Service within the Department of the Treasury. *Sebelius*, 567 U.S. at 565–66. In *The Child Labor Tax Case*, the Supreme Court determined that an exaction applied to businesses that utilized child labor was actually a penalty rather than a tax because

the burden of one tenth of a business's revenue was a heavy one, there was a scienter requirement that only applied to knowing utilizers of child labor, and it was collected by the Department of Labor rather than by the Department of the Treasury. *The Child Labor Tax Case*, 259 U.S. 20, 37 (1922).

The Fourth Circuit Court of Appeals has clarified the test for "determining whether an exaction, whatever Congress calls it, constitutes a tax." *Liberty University, Inc. v. Lew*, 733 F.3d 72, 96 (4th Cir. 2013). "Under that approach, the 'essential feature' of any tax is that 'it produces at least some revenue for the government.' Additional characteristics indicative of a tax include: the absence of a scienter requirement, collection by the Internal Revenue Service through the normal means of taxation, and the absence of negative legal consequences beyond requiring payment to the IRS." *Id.* (quoting *Sebelius*, 567 U.S. at 565–66).

In support of its power to tax, Congress possesses the power to enact statutes that criminalize violations of tax laws. This power exists within the Necessary and Proper Clause. U.S. Const. Art. I, § 8, cl. 18; *United States v. Comstock*, 560 U.S. 126, 137 (2010); *see also Comstock,* 560 U.S. at 156 (Alito, J., concurring) ("The Necessary and Proper Clause provides the constitutional authority for most federal criminal statutes. In other words, most federal criminal statutes rest upon a congressional judgment that, in order to execute one or more of the powers conferred on Congress, it is necessary and proper to criminalize certain conduct. . . .). "[I]n determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power." *Comstock*, 560 U.S. at 134 (quoting *Sabri v. United States*, 541

U.S. 600, 605 (2004)). Therefore, the regulatory provisions of a taxing scheme need only be "reasonably related to taxing purposes" to be upheld by the taxing power. *United States v. Aiken*, 974 F.2d 446, 448 (4th Cir. 1992).

## II. The National Firearms Act

Housed within the Internal Revenue Code is the National Firearms Act (the "Firearms Act"), a "comprehensive taxing scheme that regulates the manufacture, sale, and transfer of certain specially dangerous concealable weapons." *United States v. Aiken*, 974 F.2d 446, 447 (4th Cir. 1992); 26 U.S.C. §§ 5801–5871.

### a. The Taxes

The Firearms Act includes three taxes that apply to firearms importing, making, or manufacturing. (1) Firearms importers, manufacturers, and dealers are required to pay an annual occupational tax of either $500 or $1000, 26 U.S.C. § 5801; (2) any time a firearm is transferred, the transferor must pay a transfer tax of $5 or $200, § 5811; and (3) a making tax of $200 is required each time a person makes a firearm, § 5821. These taxes produced over $44 million in occupational and excise taxes in 2019. [ECF No. 58, at 6] (citing United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, Firearms Commerce in the United States: Annual Statistical Update 11 (2020), https://www.atf.gov/firearms/docs/report/firearmscommercereport2020pdf/download). The remainder of the Firearms Act is designed to assist in the revenue collection of these three taxes: the occupational tax, the transfer tax, and the making tax.

### b. Enforcement Mechanisms

Separate from these three taxes, the Firearms Act includes enforcement mechanisms that induce firearms makers, importers, manufacturers, and transferors

to pay the taxes applicable to them. These enforcement mechanisms include the National Firearms Registration and Transfer Record and criminal penalties.

### i. The National Firearms Registration and Transfer Record

The Firearms Act requires the Secretary to "maintain a central registry of all firearms in the United States which are not in the possession or under control of the United States." 26 U.S.C. § 5841(a). This registry is known as the National Firearms Registration and Transfer Record and is maintained by the Bureau of Alcohol, Tobacco, and Firearms. *Id.* "Each manufacturer, importer, and maker shall register each firearm he manufactures, imports, or makes. Each firearm transferred shall be registered to the transferee by the transferor." *Id.* § 5841(b). A firearm cannot be successfully registered without paying the making tax or filing for exemption from the maker tax. 27 C.F.R. § 479.62(b)(1) ("If the making of the firearm is taxable, the applicant shall submit a remittance in the amount of $200 with the application in accordance with the instructions on the form . . . ."). Likewise, a transfer cannot be recorded without paying the transfer tax or filing for an exemption.

### ii. Criminal Penalties

The Firearms Act then makes it unlawful for any person "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d).[1] When a person fails to comply with the

---

[1] Under the National Firearms Act, a "destructive device" is considered a firearm. § 5845(a). A destructive device is: (1) Any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. The term "destructive device" shall

Firearms Act, which includes possessing an unregistered firearm, that person is subject to a fine of $10,000, a term of imprisonment of not more than 10 years, or both. *Id.* § 5871.

In short, the portions of the Firearms Act relevant to this case require that any firearms manufacturer register a newly made firearm and pay the making tax. Those provisions then specify that possession of an unregistered firearm can result in a fine, prison sentence, or both. Defendant contends that Congress did not have the power to enact the Firearms Act and therefore the Government lacks the authority to charge and prosecute Defendant with the crime of knowingly possessing an unregistered firearm.

### III. The Taxing Power and the Firearms Act

The Supreme Court addressed the ability of Congress to enact the National Firearms Act via the taxing power in *Sonzinsky v. United States*, 300 U.S. 506 (1937). In that case, a firearms dealer challenged a conviction for failing to pay a $200 per year dealer tax. *Id.* at 507. He argued that the dealer tax was actually a penalty designed to suppress the sale of certain firearms. *Id.* at 512. The Supreme Court rejected this argument, holding that the [Firearms Act] regulates only "in aid of a revenue purpose." *Sonzinsky*, 300 U.S. at 513. In *Sebelius*, the Supreme Court reaffirmed *Sonzinsky* by pointing to the Firearms Act's tax on sawed-off shotguns as proof that "taxes that seek to influence conduct" are valid exercises of the taxing

---

not include any device which is neither designed nor redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of the 7684(2), 7685, or 7686 of title 10, United States Code; or any other device which the Secretary finds is not likely to be used as a weapon, or is an antique or is a rifle which the owner intends to use solely for sporting purposes. 26 U.S.C. § 5845(f).

6

power. *Sebelius*, 567 U.S. at 567; *see also United States v. Cox*, 906 F.3d 1170 (10th Cir. 2018).

Our Court of Appeals has also addressed the issue of whether the taxing power supports the regulations of the National Firearms Act. In *United States v. Aiken*, the United States Court of Appeals for the Fourth Circuit reaffirmed *Sonzinsky* as it applied to the National Firearms Act and short barrel shot guns. 974 F.2d 446 (4th Cir. 1992). In *Aiken*, the court examined whether the regulatory provisions of the Firearms Act were "reasonably related to taxing purposes." *Id.* at 448. It reasoned that making it illegal to transfer or possess unregistered firearms would make it more likely that firearms makers "pay the tax in the first place." *Id.*

> Section 5861(d) making possession of an unregistered weapon unlawful is part of the web of regulation aiding enforcement of the transfer tax provision in § 5811. Having required payment of a transfer tax and registration as an aid in collection of that tax, Congress under the taxing power may reasonably impose a penalty on possession of unregistered weapons. Such a penalty imposed on transferees ultimately discourages the transferor on whom the tax is levied from transferring a firearm without paying the tax.

*Id.* at 448–49 (quoting *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1992)).

### IV. Discussion

Defendant argues that *Sonzinsky* no longer controls and that under the "functional framework" of *Sebelius*, prosecution under § 5861(d) is an unconstitutional penalty, not supported by any power of Congress, rather than a tax. Defendant's argument primarily rests on changes that have been made to the Firearms Act since 1937. First, Defendant offers that the burden imposed by § 5851(d) is unreasonably high because a fine of $10,000 or a term of imprisonment

of 10 years can be imposed for failing to comply with the Firearms Act. Second, Defendant argues that *United States v. Freed* and *United States v. Staples* imposed a scienter requirement for violation of § 5861(d), making this section a penalty rather than a tax. Third, Defendant points out that the Firearms Act is now administered by the Bureau of Alcohol, Tobacco, and Firearms under the Department of Justice rather than the Internal Revenue Service of the Department of the Treasury.

Before addressing the arguments raised by Defendant, it is important to remember the difference between the three taxes imposed by the Firearms Act and the penalties imposed for failing to comply with the Firearms Act. The Firearms Act imposes an annual occupational tax along with a maker tax and a transfer tax to be paid whenever a firearm subject to the Act is made or transferred. Section 5871 imposes penalties for a failure to comply with the act by committing any of the acts listed in § 5861, such as possessing an unregistered firearm.

### a. The Burden Imposed

Defendant asserts that the Firearms Act imposes an impermissibly high burden and is therefore an unconstitutional penalty rather than a valid exercise of the taxing power because he is subject to imprisonment, a fine of $10,000, or both for violating the Firearms Act. Defendant is mistaken when he points to the penalties imposed for failing to register or possessing an unregistered firearm in § 5871 as the burden that should be examined under the *Sebelius* framework. The tax burden that Defendant is subject to under the Firearms Act is the burden of registering his firearm and paying any taxes and fees associated with that registration. The penalties under § 5871 are the penalties for failing to register and pay the taxes that raise revenue.

The burden at issue is the burden imposed by the occupational, making, and transfer taxes of the Firearms Act, not the burden imposed for failing to comply with the Firearms Act. The occupational tax under the Firearms Act is never higher than $1,000 per annum. The making tax and the transfer tax are both—at most—$200. Surely, $200, or even $1,000, is not too heavy of a burden for an exaction to be considered a tax. Section 5871 is a criminal penalty for failing to register the firearm and therefore having failed to pay the making tax. It is within Congress's constitutional taxing power to impose such a criminal penalty to ensure that the registration and making tax is complied with. I find that the reasonable tax burdens imposed by the Firearms Act weigh in favor of the exaction being a tax.

### b. Scienter Requirement

Defendant goes on to argue that *United States v. Freed* and *United States v. Staples* added a scienter requirement to criminal prosecution under § 5861(d) and, therefore, using the framework established by *the Child Labor Tax Case* and *Sebelius*, enforcement under this section is not a tax but rather an unconstitutional penalty. The Government correctly responded that the scienter is not as broad as Defendant implies.

Again, like in his argument about the severity of the burden, Defendant is once again applying the "functional framework" to the penalty for failing to pay the tax and not to the tax itself. In *Freed*, the Supreme Court of the United States read a scienter requirement into the Firearms Act. It held that prosecution under § 5861(d) did require the defendant to have knowledge that the item in question was a firearm. *United States v. Freed*, 401 U.S. 601, 610 (1971). In *Staples*, the Court expanded the scienter requirement established in *Freed*. In order to obtain a prosecution under

9

§ 5861(d), the Government must prove beyond a reasonable doubt that the defendant knew that the "features of his [firearm] brought it within the scope" of the Firearms Act. *Staples v. United States*, 511 U.S. 600, 619 (1994).

But this scienter requirement is not necessary for the tax itself to apply. Any firearm within the scope of the Firearms Act is subject to the maker tax unless exempted by statute, regardless of whether the responsible party knows that the firearm is within the scope of the Act. Any firearm within the scope of the Firearms Act that is transferred is subject to the transfer tax unless exempted by statute. The scienter requirement is only applicable to *criminal prosecution* for a failure to register the firearm and, therefore, a failure to pay the tax.

In the *Child Labor Tax Case*, the scienter requirement was related to the tax itself, not to a penalty imposed for failing to pay the tax. Employers were subject to the tax in question only if they knowingly employed child workers. *The Child Labor Tax Case*, 259 U.S. at 36–37. Similar to § 5861(d), the statute that makes tax evasion a punishable offense, 26 U.S.C. § 7201, includes a scienter requirement of willfulness. "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 . . ., or imprisoned not more than 5 years, or both, together with the costs of prosecution." *Id.* One could not argue that the scienter requirement of tax evasion applies to the base tax in question. Because the scienter requirement of *Freed* and *Staples* does not relate to the tax itself, I find that the scienter requirement for prosecution under § 5861(d) does not turn any of the three taxes imposed by the Firearms Act into an unconstitutional penalty.

10

### c. Administration

Defendant is correct that this tax scheme being overseen by the Bureau of Alcohol Tobacco and Firearms does weigh in favor of this exaction being a penalty rather than a tax such as in *The Child Labor Tax Case*. But, having found that the other two factors under *Sebelius* so clearly point to the occupational tax, transfer tax, and maker tax being taxes rather than unconstitutional penalties, this does not need to be addressed further.

### V. Conclusion

Defendant's argument that the consequences of § 5871 for violating § 5861(d) are unconstitutional penalties fails principally for attempting to apply the functional framework of *Sebelius* to the potential penalty for failing to register a firearm and pay the maker tax rather than to the tax itself. When applied to any of the three taxes imposed by the Firearms Act, it is clear that none of them are unconstitutional penalties and that the penalties section of § 5871 is created in an effort to encourage registration and revenue collection via maker and transfer taxes. At bottom, an application of the "functional framework" of *Sebelius* does not take this case outside of the holdings of *Sonzinsky* and *Aiken*.

Having determined that the taxes imposed by the Firearms Act remain a legitimate exercise of Congress's taxing power, the only remaining question is whether the enforcement mechanisms employed by Congress to effectuate revenue collection are "reasonably related" to the taxing purpose. *Aiken*, 974 F.2d at 448. As discussed above, requiring the registration of firearms and recording of transfers makes it far more likely that the making and transfer taxes will be paid and collected. Criminalizing possession of an unregistered firearm makes it far more likely that a

firearm maker will register the firearm and pay the making tax. The registration requirement and penalty for possessing an unregistered weapon are reasonably related to the taxing power and revenue generation. *United States v. Aiken*, 974 F.2d 446, 448–49 (4th Cir. 1992); *see Sonzinsky v. United States*, 300 U.S. 506, 514 (1937). Therefore, the National Firearms Act and the penalties imposed for violating it remain a constitutional application of Congress's authority. Defendant's Motion to Dismiss [ECF No. 55] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: January 7, 2021

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

12